**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

MICHAEL B. BUHRMAN,                     :

      Petitioner,                     :          Case No.  3:98cv00569

vs.                                     :          Chief District Judge Sandra S. Beckwith
                                                   Magistrate Judge Sharon L. Ovington
HAROLD CARTER, Warden,[1]                :

      Respondent.                     :

---

**SUPPLEMENTAL REPORT AND RECOMMENDATIONS[2]**

---

## I.    INTRODUCTION

Petitioner Michael Burhman is presently incarcerated in the State of Ohio serving an

indefinite sentence of fifteen to fifty-eight years.  This sentence resulted from his guilty pleas in

both the Montgomery County, Ohio and Greene County, Ohio Courts of Common pleas.  The

crimes Burhman was charged with and pled guilty to stemmed from the brutal murders, in

Burhman's presence, of three individuals by one of Burhman's accomplices.  *See State of Ohio

v. Buhrman*, 1997 WL 566154 at *1-*2 (Ohio Ct. App., Sept. 17, 1997).

During the case in the Montgomery County, Ohio Court of Common Pleas, Burhman

entered into a plea agreement entered with various state and federal officials resulting in his

---

[1]  Rob Jeffreys is the proper Respondent in this case because he is the Warden of the North Central Correctional Institution, where Petitioner is currently incarcerated.  *See* Rule 2(a), Rules Governing §2254 Cases. For docketing purposes, the caption of this case remains the same as it was when originally filed.

[2]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

guilty pleas to the following charges: (1) engaging in a pattern of corrupt activity, (2) trafficking

in marijuana, (3) felonious assault, (4) aggravated trafficking, (5) two charges of receiving stolen

property, and (6) two charges of illegal title transfer.  (Doc. #158 at 1).

    In the Greene County proceedings, Buhrman was charged with three counts of

aggravated murder.  Pursuant to the terms of the same plea agreement that resulted in his guilty

pleas in Montgomery County, Buhrman pled guilty in the Greene County Court of Common

Pleas to three counts of involuntary manslaughter.

    In his present habeas corpus case, Burhman challenges his Montgomery County

convictions, not his Greene County convictions, and claims that various state and federal

officials have breached the terms of his plea agreement in violation of his federal constitutional

rights.

    This case is before the Court upon Burhman's Second Amended Petition and Addendum

(Doc. #s 158, 159), Respondent's Supplemental Return of Writ (Doc. #164), Burhman's Reply

(Doc. #165), and the record as a whole.


## II.    BACKGROUND

### A.    Remand Issues

    A prior Report detailed the procedural history of this case and is incorporated herein by

reference.  (Doc. #140; *see* Doc. #148).  After the prior Report issued, the case was remanded for

resolution of two issues: (1) what effect, if any, Burhman's ongoing proceedings in Greene

County have on Respondent's Motion to Dismiss (Doc. #123), which raises exhaustion issues,

and on Buhrman's Motion to Amend his Petition; and (2) what effect, if any, the Greene County

proceedings have on the issue of exhaustion and on Burhman's attempt to obtain discovery

regarding the alleged breaches of his plea agreement.  (Doc. #148).

Following remand, the Court granted Burhman's Motion to Amend Petition.  (Doc. #155).  This partly resolved the first remand issue.  The remaining remand issues therefore involve whether the case must be stayed pending exhaustion of Buhrman's fifth ground for relief (breach of plea agreement) in the Greene County proceedings.

### B.    Burhman's Remaining Claims

Buhrman clarifies in his Addendum to his Second Amended Petition that he does not seek to re-litigate his first through fourth grounds for relief.  (Doc. #159).  Consequently, the only claims remaining to be resolved at this point in the case are raised in Buhrman's fifth ground for relief, which states:

> The State of Ohio has breached the Plea Agreement which was entered with the State, with the Petitioner, in violation of Petitioner's 5th, 6th, and 14th Amendment Rights to Due Process pursuant to the United States Constitution.

(Doc. #158 at 9).

Buhrman's Second Amended Petition explains that his plea agreement consisted of his agreement to cooperate with State of Ohio by providing "truthful, candid and complete answers to inquiries regarding his knowledge as to criminal conduct of which he was aware."  (Doc. #158 at 10).  Buhrman further explains:

> In exchange for his cooperation, Mr. Burhman was promised the following regarding punishment and confinement:
>
> a.    that neither he nor his wife would face any additional criminal charges for illegal activities that predated the plea agreement with the exception of any homicide.
>
> b.    that the FBI would do a 'risk analysis' to determine eligibility for federal protection for Mr. Buhrman and his family;

      c.      that Gregory Lockhart of the United States Attorneys' Office
would recommend that Mr. Buhrman serve his time in a federal
correctional facility and that the parties would make every effort to
see that recommendation carried out.  Mr. Buhrman was
specifically reassured that he would not be sent to the maximum
security facility at Lucasville, the Southern Ohio Correctional
Facility.

(Doc. #158 at 10).

Buhrman maintains that he was never "risk assessed" by the FBI and the State, and the
United States Attorney did not make any substantive effort to secure his placement in a federal
facility.  Consequently, as early as May 5, 1993, the State of Ohio specifically requested that the
Ohio Department of Rehabilitation and Corrections place Buhrman in a maximum security
facility.  *Id*. at 10-11.

Buhrman also contends that although he fully cooperated with state officials and did not
violate the plea agreement, the state not only failed to write letters asking the Ohio Parole Board
to favorably consider his cooperation.  According to Buhrman, "the state sent unfavorable letters
to the Ohio Parole Board on February 20, 2001.  The letters detailed Mr. Buhrman's original
convictions and described him in the most disparaging terms:

      (a)      The letter of Assistant Ohio Attorney General Robert Smith characterized
Mr. Buhrman a[s] a terrorizer and manipulator of people but spoke only of
Mr. Buhrman's conduct before he entered prison.  There was no comment
on Mr. Buhrman's cooperation or lack thereof.

      (b)      FBI Special Agent Robert Burnham detailed Mr. Buhrman's offenses of
conviction and complained that he believed that Mr. Buhrman had not
been fully candid in debriefings and attempted to manipulate witnesses in
order to become more valuable to the state as a cooperating informant.  No
mention was made of Mr. Buhrman's assistance in providing recordings to
the Government.

      (c)      Stephen Walker, former Organized Crime Task Force Director, agreed
with letters of Smith and Burnham and expounded on Mr. Buhrman's

4

'charismatic and compelling' ability to manipulate people.

(d)     Assistant Prosecuting Attorney for Montgomery County Leon Daidone also repeated what Mr. Buhrman had originally been convicted of and called him a liar and a deceiver. Mr. Daidone did not specify in what regard Mr. Buhrman had failed to cooperate with authorities.

(Doc. #158 at 11-12).

## III.   EXHAUSTION

### A.   Exhaustion

"It has been settled since *Ex parte Royall*, 117 U.S. 241 (1886) that a state prisoner must normally exhaust available state remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971); *see Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002). "[I]t would be unseemly in our dual system of government for federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Workman v. Tate*, 957 F.2d 1339, 1344 (6th Cir. 1992)(quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)(other citations omitted)).

The exhaustion requirement, now codified by the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), states, "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. §2254(c); *see* 28 U.S.C. §2254(b). Thus, a petitioner exhausts his or her claims by fully and fairly presenting them in one complete round of the state's established review process, including presentation to the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001).

5

Burhman has exhausted his fifth ground for relief to the extent he now seeks to litigate whether the alleged breaches of his plea agreement effect his guilty pleas in the Montgomery County Court of Common Pleas.  He has done so by presenting his breach-of-plea-agreement claim as to his Montgomery County convictions in a petition for post-conviction relief at all levels of the Ohio courts.  *See* Doc. #164, Exhibits 1, 14, 18.  Notably, the Ohio Court of Appeals affirmed the trial court's dismissal of Buhrman's second post-conviction relief petition because he had not produced evidence sufficient to show that he had cooperated with state and federal officials, and consequently, the plea agreement did not require officials to send favorable letters to the Ohio Parole Board.  (Doc. #164 at Exh. 17).

Having unsuccessfully litigated this claim through one complete round of relief in the Ohio courts by way of a second petition for post-conviction relief, *see id*.; *see also* Doc. #140 at 2-7, Burhman no longer has a way to further litigate in the Ohio courts his claim that state and federal officials breached the plea agreement he entered in the Montgomery County Court of Common Pleas.  Burhman has therefore exhausted this claim in the Ohio courts.  *See O'Sullivan*, 526 U.S. at 845; *see also Stanford,* 266 F.3d at 451.

So far, then, the issue of exhaustion is straightforward.  It is complicated, however, because Buhrman has achieved somewhat more success with his breach-of-plea-agreement claim as it relates to his guilty pleas in the Greene County Court of Common Pleas.  Although that Court dismissed Buhrman's petition for post-conviction relief, upon his appeal, the Ohio Court of Appeals reversed and remanded after finding a genuine issue of material fact in the record concerning whether Buhrman in fact cooperated with prosecuting authorities.  *State of Ohio v. Buhrman*, 2004 WL 405735 at *4 (Ohio Ct. App., March 5, 2004).  On remand, the Greene

6

County Court of Common Pleas held an evidentiary hearing on March 21, 2005 but still – some eleven months later – has not reached a decision.  (Doc. #157).  Hence, Respondent's Motion to Dismiss (Doc. #123).  Respondent presently has no objection to staying the present case and believes it is the better procedural course of action to stay the present case until the conclusion of the Greene County proceedings.  (Doc. #151 at 4).

Burhman contends that the instant case is not impacted by the stalled post-conviction proceedings in Greene County and that he has exhausted his claims with respect to his convictions in Montgomery County.  He therefore renews his Motion for Discovery and Motion for an Evidentiary seeking to demonstrate that he in fact cooperated with state and federal officials, and that due to his cooperation, these officials breached his plea agreement by sending unfavorable letters, rather than favorable letters, to the Ohio Parole Board.  (Doc. #s 150, 154).

What impact, then, do the Greene County proceedings have on the issues of exhaustion and discovery in the present case?

### B.    <u>Greene County Proceedings</u>

As previously concluded, Buhrman has exhausted his breach-of-plea-agreement claims as they relate to his guilty pleas in Montgomery County Ohio.  This conclusion is not altered by the Greene County proceedings even though the Greene County Court of Common Pleas is currently contemplating whether Buhrman has established that state and federal officials violated his plea agreement by unfavorable letters, rather than favorable letters, to the Ohio Parole Board.

The only possible way the Greene County proceedings might impact the Montgomery County proceedings would be if the Greene County Court of Common Pleas reaches a contrary finding of fact – specifically, that during the same time period at issue in the Montgomery

County proceedings, Buhrman cooperated with state and federal officials as required by the plea agreement, and that despite his cooperation state officials failed to provide positive letters, and instead provided negative letters, to the Ohio Parole Board.  This finding of fact, however, has not occurred, and may or may not ever occur, in the Greene County proceedings.

The unusual procedural posture of the present case arises from the Ohio Court of Appeals different conclusions in Buhrman's Montgomery County and Greene County post-conviction relief proceedings: The Court of Appeals affirmed the Montgomery County Court's dismissal, without an evidentiary hearing, of Buhrman's petition for post-conviction relief after agreeing that Buhrman had not met his burden of proof.  *See* Doc. #164, Exh. 17.  Yet, in the Greene County proceedings, the Ohio Court of Appeals reversed the trial court's dismissal without an evidentiary hearing after finding a genuine issue of material fact in the record.  *State of Ohio v. Buhrman*, 2004 WL 405735 at *4 (Ohio Ct. App., March 5, 2004).

Understanding these different conclusions requires the recognition that both decisions involved applications of the following rule:   In Ohio, a "trial court may deny a petition for post-conviction relief without a hearing where the petitioner fails to present any evidentiary material other than his own affidavit, and the record contradicts, or at least does not support, the petitioner's contention."  *State v. Kapper*, 5 Ohio St.3d 36 (1983).  The applications of this rule to Buhrman's two post-conviction relief cases caused different results because of the Court of Appeals had two different records before it in the two cases.

The record in the Montgomery County case contained both Buhrman's affidavits and a contrary affidavit of Robert F. Smith, Assistant Ohio Attorney General, who stated that Buhrman did not fully and truthfully cooperate with prosecuting authorities.  (Doc. #164, Exh. 17 at 7).

The Montgomery County Court of Appeals held that under *State v. Kapper*, Buhrman could not rely on his own affidavit in opposition to Smith's affidavit but was required to produce corroborating evidence to support his claims.  (Doc. #164, Exh. 17 at 5-7).  Having failed to do so, the Ohio Court of Appeals affirmed the trial court's dismissal without an evidentiary hearing. *Id*. at 10.

In contrast, the record in the Greene County proceedings did not contain any evidence – like Smith's affidavit – that contradicted Buhrman's affidavits.  The Greene County Court of Appeals therefore found, again (and consistently) applying *State v. Kapper*, that without such evidence, Buhrman was not required to present additional evidence corroborating his affidavits. Buhrman's affidavit was enough to create genuine issue of fact regarding his cooperation with prosecuting authorities.  *State of Ohio v. Buhrman*, 2004 WL 405735 at *4.  Hence, on remand, the Greene County Court of Common Pleas held an evidentiary hearing, the results of which remain pending.

It thus appears that the critical difference between the two state-court proceedings was the following: In the Montgomery County proceedings, the State of Ohio presented evidence (Smith's affidavit) sufficient to contradict Buhrman's affidavit but failed to present the same evidence in the Greene County proceedings.  While this might eventually lead to different results in the state courts, Buhrman – having fully exhausted his challenge to the plea agreement as it relates to his Montgomery County plea agreement and guilty pleas – should not be penalized by further delay in this case by the State of Ohio's failure to present the same winning evidence in the Greene County case that it presented in Montgomery County case.

In addition, even if the Greene County Court of Common Pleas holds that state or federal

officials violated his plea agreement, the only potential relief available to Buhrman in Greene County will relate to his guilty pleas in that Court, not those he entered in Montgomery County. Respondent in the present case has not pointed to an avenue of relief Burhman will have after in the Montgomery County courts after the conclusion of the Greene County proceedings. Similarly, the relief potentially available to Buhrman in the present federal habeas case will only relate to his Montgomery County convictions because his Petition only seeks relief from those convictions.  If in the present case Buhrman establishes that his breach of plea agreement claim has merit, two alternative types of relief are available: either withdrawal of the guilty pleas or specific performance of the plea agreement.  *See Easton v. Seabold*, unpublished op., 1994 WL 637725 at *2 (6th Cir. Nov. 10, 1994)(citing *United States v. Williams*, 656 F.2d 357, 359 (6th Cir. 1994)); *see also Brown v. Poole*, 337 F.3d 1155, 1161 (9th Cir. 2003); *Peavy v. United States,* 31 F.3d 1341, 1346 (6th Cir.1994).  Consequently, the potential relief available to Buhrman in this case will directly impact his Montgomery County convictions and plea agreement, rather than his convictions and plea agreement in Greene County.

Lastly, the interests of comity do not mandate a stay of the present case to await the results of the Greene County proceedings, because Buhrman has given the Ohio courts one full and fair opportunity to consider his breach of plea agreement claim as it relates to his Montgomery County convictions.  "[A] habeas petitioner need not exhaust any and all remedies that are potentially available to him in state court." *Clinkscale v. Carter*, 375 F.3d 430, 439 (6th Cir. 2004).  "[A] petitioner need only exhaust those remedies that comprise a state's 'standard,' 'established,' 'normal' appellate review process." *Id.* (explaining parenthetically *O'Sullivan*, 526 U.S. at 844-45).  Any possible relief in the Montgomery County proceedings that might flow

10

from a ruling favorable to Burhman in Greene County proceedings would be beyond Ohio's normal or standard appellate review process, because such a favorable ruling would only apply to his Greene County guilty plea.  Burhman would in some procedural way need to alert the Montgomery County Court of Common Pleas about the (as yet hypothetical) favorable ruling in Greene County.  How he would do this – a third petition for post-conviction relief? – would certainly be beyond the state's normal or standard appellate review process.

Accordingly, the ongoing Greene County proceedings do not effect the conclusion that Buhrman has fully exhausted his constitutional challenges to the alleged breaches on his plea agreement raised in his Fifth Ground for Relief in his Second Amended Petition.

## IV.    PROCEDURAL DEFAULT

### A.    <u>Applicable Law</u>

If a federal habeas petitioner fails to fairly present his federal claims to the state courts and if a state procedural rule bars the petitioner from receiving in state court a merits review of the federal claims, then the petitioner's procedural default may result in a waiver of the claims for purposes of federal habeas review.  *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Buell v.  Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).  One way an Ohio petitioner may procedurally default is by failing to raise on direct appeal claims appearing on the face of the trial record.  *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004).

Only two limited situations excuse a procedural default:  (1) if a petitioner shows cause and prejudice or (2) if the petitioner shows a fundamental miscarriage of justice will result from the failure to consider the merits of the claims.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Monzo v. Edwards*, 281 F.3d 568,

575 (6th Cir. 2002).

### B.    Analysis

Respondent argues that Buhrman committed a procedural default by failing to raise in state court his claim that his plea agreement was breached because Assistant U.S. Attorney Lockhart did not recommend a "risk analysis" for his suitability for the witness protection program and the FBI did not do a risk analysis. *Supra*, p. 3.

Buhrman contends that the issue of procedural default has already been resolved in this case when Judge Beckwith listed the following as "[t]he exhausted claims properly at issue here... 'The State agreed to apply for and recommend his admittance to the Federal Witness Protection Program. Similarly, the State promised to apply for, and recommend, his placement in a Federal prison, and to request that the parole board give him favorable consideration upon review. Finally, the State agreed to recommend that Buhrman be placed in the kind of prison, and in the region, that he requested during his plea negotiations." (Doc. #148 at 8).

Buhrman's contention lack merit. A careful reading of Judge Beckwith's Order reveals that no holding was reached on the issue of procedural default Respondent now seeks to litigate. Judge Beckwith merely recognized that Buhrman's breach of plea agreement claim was properly exhausted as to three factual bases: (1) the State's promise regarding the Federal Witness Protection Program; (2) the State's promise regarding placement in a Federal prison; and (3) the State's agreement to recommend Buhrman for placement in a certain kind of prison. *See* Doc. #148 at 8.

The conclusion that these claims were properly exhausted is not the same as the conclusion Buhrman seeks – that these claims were not procedurally defaulted. As discussed

above, exhaustion concerns whether Buhrman fairly presented his claims to the Ohio courts through one complete round of appellate review in the Ohio Court of Appeals and the Ohio Supreme Court. *See Clinkscale*, 375 F.3d at 439. Procedural default, in contrast, focuses on whether Buhrman properly raised his claims in state court by following Ohio's procedural rules. *See Clinkscale*, 375 F.3d at 440-41.

A review of Buhrman's first post-conviction relief petition reveals that he raised the claim that the Assistant U.S. Attorney breached Buhrman's plea agreement by not recommending him for placement in a Federal prison and by not applying for Buhrman to obtain a different name and relocation in a different community. *See* Doc. #17, Exh. 16 at 8-9. Buhrman's petition, moreover, provides citation to a transcript, a copy of which Buhrman attached to his petition, where the Assistant U.S. Attorney discussed the Burhman's possible eligibility for the Witness Protection Program. *Id.* (citing Exh. N to petition at 13-15). According to this transcript, the Assistant U.S. Attorney stated in part:

> The protection for you can take one of a couple of forms. First, you could possibly qualify for the Witness Protection Plan wherein you would be given a different name and opportunity to when your time has been served to relocate to another community under a new name and other identity. The second way that Federal protection is involved is in allowing you to serve your state sentence in a Federal prison in a protected witness in essence with other people who have been in a cooperation mode with the Federal government. Both of those processes require the same risk analysis and application by me to the Justice Department. I agree to make that application. I agree to make that recommendation that you be place in one of those programs for you safety. I believe from conversations I have had with Washington and with the FBI that they will agree that there's a risk and that they will accept you in one of those programs....

*Id.* at 13-14.

After the Court of Common Pleas dismissed his first petition, Buhrman raised the same allegations in support of his breach of plea agreement claim in both the Ohio Court of Appeals

13

and the Ohio Supreme Court. *See* Doc. #17, Exh. 33 at 17 and Exh. 42 at 12-13.

Respondent contends that Burhman committed a procedural default by not raising any specific breach of plea agreement claim in the Ohio Supreme Court, and by instead only raising the general allegation that the State of Ohio breached at least twenty-two of its promises in the plea agreement. A review of Buhrman's Memorandum in Support of Jurisdiction supports the conclusion that Buhrman only raised a general allegation of twenty-two alleged breaches of the plea agreement. *See* Doc. #17, Exh. 42 at 12. However, this was consistent with the Ohio Supreme Court's Rules of Practice. These Rules required Buhrman to file a Memorandum in Support of Jurisdiction limited to "a brief and concise argument" in support of each proposition of law. *See* Rule III, Section 1(B)(4), Ohio Supreme Court Rules of Practice. Only after the Ohio Supreme Court accepts jurisdiction, which it declined to do in Buhrman's case, do the Ohio Supreme Court's Rules permit a brief on the merits detailing the factual and legal basis for the appeal. *See* Rule VI, Section 2. By raising his general allegation concerning the same breach of plea agreement claim raised in the Ohio Court of Appeals, Buhrman followed the Ohio Supreme Court's Rules of Practice, and he consequently, did not commit a procedural default.

By raising these factual allegations at all levels of the Ohio courts, Buhrman did not commit a procedural default. The Ohio Court of Appeals, moreover, reached and rejected these claims on the merits rather than finding them barred by any failure by Buhrman to properly raise them under Ohio procedural rules. *See* Doc. #17, Exh. 39 at 9-11.

Accordingly, Buhrman's breach of plea agreement claims based on the allegations concerning risk analysis and the Assistant U.S. Attorney's promises are not procedurally defaulted.

14

## V.    THE MERITS

### A.    The Parties' Contentions

Respondent contends that Burhman's breach of plea agreement claims fail because the Ohio courts reasonably determined that he did not cooperate with state and federal officials as required by the plea agreement.

Buhrman argues that this Court should hold an evidentiary hearing on the factual issue, before which he is entitled to discovery, of whether he cooperated as required by the plea agreement.  Buhrman maintains that he has presented extensive, documented adherence to the plea agreement, and the Ohio courts' contrary determination – that he failed to cooperate with state and federal officials – constitutes an unreasonable finding of fact.

### B.    The AEDPA

The plain language of §2254 prohibits granting a Writ of Habeas Corpus based on a *de novo* review of state-court decisions.  *Price v. Vincent*, 538 U.S. 634, 639 (2003).  Instead, the AEDPA requires the federal courts to view state-court decisions "through the lens of §2254...." *Price*, 538 U.S. at 639.  A writ of habeas corpus may not issue under 2254 with respect to any claim adjudicated on the merits in state court unless the adjudication either:

    1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrases "contrary to" and "unreasonable application" have independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted); *see Doan v. Brigano*, 237 F.3d 722, 729 (6th Cir.2001).

**C.**  **Analysis**

There is no dispute that the plea agreement required Buhrman to cooperate with state and federal officials.  His Second Amended Petition acknowledges, "Mr. Burhman's plea agreement with the state required him to give cooperation to the State of Ohio.  Specifically, Mr. Buhrman agreed to provide truthful, candid and complete answers to inquiries regarding his knowledge as to criminal conduct of which he was aware...."  (Doc. #158, addendum, Ground Five at ¶2).

The Montgomery County Court of Appeals determined that Burhman had not cooperated as required by the plea agreement.  In so doing, the Court of Appeals fully adopted the trial court's findings, in pertinent part, as follows:

> 'The Defendant claims that the plea agreement into which he entered was breached because the various Governmental Agencies involved did not send letters of 'Favorable Consideration,' as promised to the Parole Board, and that as a result, his rights under the Fifth and Fourteenth Amendments to the United States Constitution have been violated....  The Plaintiff [State of Ohio] has moved for summary judgment based on the belief that the Defendant has breached the plea agreement, thus releasing the state and federal parties to the agreement of their obligations to send letters to the Parole Board on behalf of the Defendant.  There is no factual information properly before the Court to demonstrate that the Defendant fully, completely and truthfully cooperated after his plea.

> 'The Defendant has filed several affidavits, however, they are not

16

sufficient to establish that a genuine issue of material fact exists as to whether he fulfilled his obligations under the plea agreement. In the affidavit attached to the Defendant's Motion..., the Defendant states that there is no evidence that he breached the agreement; but he does not state that he did not breach the agreement. Furthermore, in the Defendant's affidavit attached to the Defendant's Opposition to the Plaintiff-Respondent's Motion for Summary Judgment..., the Defendant states that he undertook full cooperation and details the exact nature of his cooperation. However, the affidavit of Robert F. Smith, Assistant Attorney General who was involved in the Defendant's prosecutions, contradicts any claim that the Defendant fully cooperated. This affidavit clearly demonstrates that Buhrman did not cooperate. Smith found 'Burhman was manipulating evidence and testimony.' (Aff. Robert F. Smith at ¶25). This manipulation was confirmed in recorded conversations between the Defendant and his wife. The Defendant has not disputed this affidavit evidence. Therefore, the Defendant's Petition should be denied because there is not sufficient evidence before the Court to raise a genuine issue as to material fact about whether or not the Defendant complied with the plea agreement.

* * *

. . .The plea agreement provides that, as a condition of the state and federal representatives sending letters to explain the Defendant's cooperation, the Defendant must fully cooperate. Therefore, pursuant to the terms of the plea agreement, because there is undisputed evidence that the Defendant has not fully cooperated, the agencies were not required to send letters to the Parole Board. Therefore, the state has not breached the plea agreement by sending negative letters to the parole board.

(Doc. #164, Exh. 17 at 6-8).

A review of the transcript of the plea agreement establishes that Buhrman not only agreed to cooperate with state and federal authorities, he agreed to <u>fully</u> cooperate. During the on-the-record discussion, in the presence of the trial judge, between Buhrman and state and federal officials concerning the terms of the plea agreement, the Assistant U.S. Attorney explained in part, "It is expressly understood that for this agreement to be binding, Mr. Buhrman must be entirely candid and truthful. He understands that his failure to provide full and truthful cooperation is a breach of the plea agreement.... It is expressly understood that for this

17

agreement to be binding, Mr. Buhrman must be entirely candid and truthful.  He understands that his failure to provide full and truthful cooperation is a breach of the plea agreement...."  (Doc. #154, Exh. A at 9).  Burhman stated that he understood and agreed to the plea agreement.  (Doc. #154, Exh. A at 26-37).  In light of this, the Ohio courts' determination that the plea agreement required Buhrman to fully and completely and truthfully cooperate with state and federal authorities was supported by the record.

To the extent the above-quoted discussion, *supra*, at p. 17, by the Court of Common Pleas, which was adopted by the Ohio Court of Appeals, made factual findings, such findings are entitled to a presumption of correctness.  *See* 28 U.S.C. §2254(e)(1).  The presumption of correctness applies to the extent state court findings reached "basic, primary or historical facts and 'implicit findings of fact...'"  *Powell v. Collins*, 328 F.3d 268, 281 (6th Cir. 2003)(quoting in part *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996)).  The Ohio courts' finding that Burhman did not fully and truthfully cooperate with state and federal authorities constituted a primary, basic, and historical fact subject to the presumption of correctness, *see id*., unless Buhrman rebuts this finding by clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1999); *see also* 28 U.S.C. §2254(e)(1).

Burhman contends, "The record in this case demonstrates that Mr. Buhrman has complied with the plea agreement and has offered extensive assistance to the state...  Having been denied an evidentiary hearing on his state post-conviction petition, Mr. Buhrman was deprived of a process to detail the specifics of his extensive cooperation in state court."  (Doc. #165 at 6).  In the present case, Burhman relies on the evidence he presented in support of his Motion for Discovery and Evidentiary Hearing to establish the fact and extent of his cooperation.

18

*Id*. at 6-7; *see* Doc. #155 and attached Exhibits (sealed).

A review of Buhrman's evidence does not reveal the presence of clear and convincing evidence sufficient to rebut the presumption of correctness attached the Ohio courts' finding that he failed to fully and truthfully cooperate with state and federal officials. Although Burhman's evidence tends to show that he provided some, perhaps even substantial, assistance to state and federal authorities, his evidence does not show that he <u>fully</u> and <u>truthfully</u> cooperated with these authorities as required by the plea agreement. *See* Doc. #154 and attached Exhibits (sealed).

In addition, the main problem Burhman faces, and has not overcome, in this habeas corpus case is Assistant Attorney General Robert Smith's affidavit. As the Ohio courts correctly recognized, Smith's affidavit tends to show that Burhman did not fully and truthfully cooperate with state and federal officials. Smith states, "Towards the end of 1995, it began to appear that Buhrman was manipulating witnesses and testimony in an effort to [make] Buhrman seem more valuable so that he could convince us to go back to the sentencing judges and get him a determinate sentence so that he would not face the parole board. As a result of several interviews with other sources, agents began to believe that some of the evidence generated by Buhrman was tainted in this manner and that this was jeopardizing our ever being able to use any evidence from Buhrman in a criminal prosecution." (Doc. #164, Exh. 8, Smith Aff. at ¶s 25-26). In an effort to test this theory, investigators recorded Buhrman's phone calls from prison to his wife and others between November 1995 and March 1996. Smith continues, "These calls made it clear that Buhrman was acting to manipulate testimony and to even make himself falsely appear to be an eye-witness to certain events." *Id*. at ¶28. Smith then provides two specific examples of conversations. In one example, Burhman discussed what kind of witness he

(Buhrman) should be in a particular case; in the other, Burhman expressed his desire to talk to one of his alleged criminal associates so he could tell the alleged criminal associate what to say to task force agents. *Id.* at ¶s 28-29.

Because the Ohio courts based their finding of fact concerning Buhrman's failure to fully cooperate on Smith's affidavit, because Smith's affidavit supports the Ohio courts' factual findings, and because Buhrman has not presented clear and convincing evidence to rebut this finding, the Ohio courts' finding that Buhrman did not fully and truthfully cooperate is entitled to the presumption of correctness.

In addition, although Buhrman emphasizes that he did not receive an evidentiary hearing in the Montgomery County Court of Common Pleas, he has not presented circumstances showing that he was denied notice or an opportunity to be heard in that Court.  Consequently, he has not shown that the state courts violated his constitutional right to due process.  *Cf. Lugo v. Keane*, 15 F.3d 29, 30 (2nd Cir. 1994)("No principle is more fundamental to our system of judicial administration than that a person is entitled to notice before adverse judicial action is taken against him.").  Nor does any such deficiency appear in those proceedings even though Buhrman did not receive an evidentiary hearing.  The Common Pleas Court permitted Burhman to file a Petition with attached Exhibits, a Motion for Leave to Invoke Discovery and for Continuance of Summary Judgment Proceedings with his attached affidavit, a Reply, a Memorandum in Opposition to Summary Judgment with attached Exhibits (including his eight-page affidavit), a Reply, and a Memorandum in Opposition to the State of Ohio's Motion to Dismiss.  (Doc. #164, Exhs. 1, 4, 6-7, 11).  By providing Buhrman with ample opportunity to submit both evidence and argument in support of his breach of plea agreement claim, the Court

of Common Pleas provided Buhrman with sufficient opportunity to raise and litigate his claims, thereby providing him with at least the minimal amount of process due under the Constitution.

Lastly, the manner in which the Montgomery County Court of Common Pleas and Ohio Court of Appeals applied *State v. Kapper*, 5 Ohio St.3d 36 (1983) does not raise any due process concern. The *Kapper* rule simply required Buhrman to produce more evidence than his own affidavit, once the State of Ohio submitted Assistant Attorney General Smith's affidavit. *Id*. That Buhrman was given the opportunity to do so is shown by his opposition to the State of Ohio's reliance on *Kapper*. *See* Doc. #164, Exhs. 3, 7. Because Buhrman was given the opportunity to respond to the State of Ohio's reliance on the rule of *Kapper* (and Smith's affidavit), and because Burhman availed himself of this opportunity, his lack of success does not reveal a due process violation. In addition, it does not appear – at least from Buhrman's Greene County proceedings – that the Ohio courts apply the *Kapper* rule in a manner inconsistent with due process. As discussed above, *supra*, §III(B), the *Kapper* rule did not prevent the Court of Appeals in Buhrman's Greene County proceedings from remanding the case for an evidentiary hearing when the record required it.

### D.    Conclusions

The Montgomery County, Ohio Court of Appeals' finding that Burhman failed to fully and truthfully cooperate with state and federal authorities is entitled to the presumption of correctness. Because of this presumed fact, Burhman was not entitled to any of the benefits of his plea agreement as it relates to his guilty pleas in the Montgomery County Court of Common Pleas. As a result, the Montgomery County, Ohio Court of Appeals' rejection of his breach of plea agreement claim was not contrary to, or based on an unreasonable application of, Supreme

21

Court case law.

Although this Court has the inherent authority to order an evidentiary hearing to determine anew if Buhrman fully and truthfully cooperated as required by the plea agreement, *see Harries v. Bell*, 417 F.3d 631, 635 (6th Cir. 2005), no evidentiary hearing is warranted in the present case in light of the presumption of correctness that attaches to the decisions of the Montgomery County Court of Common Pleas and the Court of Appeals. *Cf. McMcAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004). In addition, providing Buhrman with an evidentiary hearing in this case would effectively permit him to sidestep the state courts' application and enforcement of its own procedural rule set forth in *Kapper*, which required him to present evidence to the state courts beyond his own affidavit, once the State of Ohio produced Smith's affidavit. Thus, in the particular circumstances of the present case, comity cautions respect for the state courts' enforcement of the *Kapper* rule, and as a result, Buhrman is not entitled to an evidentiary hearing in this Court.

Accordingly, for these reasons, and because Burhman's additional evidence does not warrant an Order granting him the right to conduct discovery, *see* Doc. #154 and attached Exhibits (sealed), Buhrman's renewed Motions For Discovery and Evidentiary Hearing lack merit.[3]

## VI.    CERTIFICATE OF APPEALABILITY

Before a petitioner may take an appeal from a denial of a petition for a writ of habeas

---

[3] This Report incorporates by reference the prior Order in this case setting forth the legal standards applicable to determining whether discovery is warranted in habeas cases. (Doc. #88 at 7-10). While that Order also informed Burhman of his obligation "to plead and give evidence of his performance..." of his cooperation, *id*. at 19, for the reasons stated herein, his evidence is insufficient to overcome the presumption of correctness, and he has therefore not shown that discovery is warranted. *See id*. at 18-20.

corpus, he or she must first obtain a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). To obtain a certificate of appealability when a petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

If the District Court dismisses the petition on procedural grounds without reaching the constitutional questions, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling. *Slack*, 529 U.S. at 484. The procedural issue should be decided first so as to avoid unnecessary constitutional rulings. *Slack*, 529 U.S. at 485 (citing *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (1936)(Brandeis, J., concurring)).

The main conclusion of this Supplemental Report, that Burhman's breach of plea agreement claim lacks merit, as well as the other conclusions reached herein, are not debatable by jurists of reason. Consequently, a certificate of appealability should not issue.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Burhman's Second Amended Habeas Petition (Doc. #158) be DENIED and DISMISSED;

2.  Burhman's Renewed Motions For Discovery And An Evidentiary Hearing (Doc. #154)(sealed) be DENIED;

3.  A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

4.  The case be terminated on the docket of this Court.

March 2, 2006

                                              s/ Sharon L. Ovington     
                                           Sharon L. Ovington
                                           United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).